## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOAN WADELTON<br>4530 South 34th Street<br>Arlington VA  22206,<br><br>and<br><br>TRUTHOUT<br>1669 Benedict Canyon Drive<br>Beverly Hills, CA  90210,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF STATE<br>2201 C Street, NW<br>Washington, DC  20520,<br><br>Defendant. | Civil Action No.  1:13-cv-00412 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiffs Joan Wadelton and Truthout bring this action against Defendant Department of State pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *et seq.*, *as amended* ("FOIA"), the Privacy Act, 5 U.S.C. § 552a, *et seq.* (collectively "FOIA/PA"), the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651.

## JURISDICTION

1.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over Defendant pursuant to 5 U.S.C. §§ 552(a)(4)(B), 552a(g)(1)(D) and 28 U.S.C. § 1331.

## VENUE

2.      Venue is appropriate under 5 U.S.C. §§ 552(a)(4)(B), 552a(g)(5) and 28 U.S.C. § 1391.

## PARTIES

3.      Plaintiff Joan Wadelton is a U.S. citizen and is a resident of the Commonwealth of Virginia.

4.      Plaintiff Truthout is a non-profit organization under the laws of the state of California and has the ability to disseminate information on a wide scale.

5.      Defendant Department of State ("State" or "the Department") is an agency within the meaning of 5 U.S.C. § 552(e), and is in possession and/or control of the records requested by Plaintiffs which are the subject of this action.

## BACKGROUND

6.      Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

### *Wadelton's Employment History*

7.      Wadelton joined the Foreign Service in 1980.  By October 1999, she had worked her way up through the ranks to FO-01, the highest rank before the Senior Foreign Service.

8.      From 1998 through 2000, Wadelton was a Senior Policy Advisor to Senator Joseph Biden, providing advice on policy for Russia and the United Nations.  In 1999, Wadelton began working to create a model for the Department's Liaison Office on Capitol Hill, which she opened in 2002.

9.      In 2003, Wadelton was among the first State Department officers on the ground in Iraq.  During 2003-04, she served in Baghdad as an Economic Counselor, advising Ambassador

L. Paul Bremer on Iraq's economic development and relations with the United States.  Her work included dangerous travel in Iraq, including to Fallujah.

10.     After completing her first tour in Iraq, in 2004 and 2005, Wadelton took a prestigious position as Advisor on Iraq to the Under Secretary of State for Economic, Business and Agricultural Affairs.

11.     In 2005, Wadelton served a second stint in Iraq, serving as a Senior Advisor for Agriculture and Economic Development at the U.S. Embassy in Baghdad.

12.     When Wadelton returned from Iraq, she served as the senior advisor in the Bureau of Economic Energy and then as Director of the Office of Intellectual Property Enforcement, and remained in that position through November 2007.

13.     From November 2007 until 2011, Wadelton served as the Senior Advisor for Africa with the Bureau of Economic, Energy and Business Affairs and held a prestigious position on the Department's Policy Planning Staff as an Africa Advisor to Secretary of State Clinton.

### *Wadelton's Grievances and HR's Problems*

14.     Upon information and belief, Wadelton became an "enemy" of the leadership in the Department's Bureau of Human Resources ("HR") in 2000, when she protested HR's plan to remove her from her fellowship in Senator Biden's office.

15.     Over the past decade, Wadelton has collected evidence demonstrating that the type of treatment she received from HR was not unique to her, but instead was the product of a systematic manipulation of the selection board promotion process by a circle of current and former high-level HR managers to advantage themselves and their allies and to disadvantage those they did not favor.

16.     In or about early 2002, Wadelton complained to the Department's Office of Inspector General ("OIG") about mismanagement and abuses of position by HR senior management.

17.     Shortly after making this complaint, Wadelton was low-ranked despite her consistently laudatory annual performance reviews and her role in creating the Congressional Liaison Office, a priority of Secretary Colin Powell.  The low-ranking statement was false, and it was withdrawn after Wadelton grieved it.

18.     When Wadelton had remained with the Congressional Liaison Project, she gave up an assignment as a Deputy Chief of Mission.  When the Project was fully functional, however, HR staff instructed Wadelton to accept an assignment with significantly reduced responsibilities and threatened her with involuntary retirement if she did not accept it.  HR withdrew its threat only after the Senate placed all Department nominations on hold until Wadelton was given an appropriate assignment.

19.     In 2004, when Wadelton was under consideration for promotion to the Senior Foreign Service, an unknown person or persons in HR provided the 2004 Senior Threshold Board ("STB") with a copy of her Official Personnel File, but omitted a copy of the performance review reflecting her service in Iraq, where she was commended for her courage and good work (including leading the first Economic Reconstruction Team into Fallujah) and recommended for immediate promotion.

20.     On 21 April 2005 Wadelton filed a grievance regarding the missing Iraq file with the Department.  The Department denied her grievance.

21.     Wadelton then appealed the matter to the Foreign Service Grievance Board ("FSGB" or "the Board"), and the Department agreed to remove the low ranking statement from Wadelton's file.

22.     In 2005, one or more persons in HR submitted Wadelton's Official Personnel File to the 2005 STB, but omitted from the file two group honor awards that she had earned.

23.     As a result of Wadelton's grievances filed with the FSGB, the FSGB held that Wadelton had not been properly considered for promotion in 2003 and 2004, and it ordered the Department to convene Reconstituted Promotions Boards ("Recon Boards") for 2003 and 2004 to re-review Wadelton for promotion.  In addition, the Department agreed to hold Recon Boards for the 2005 promotions, for a total of six Recon Boards.

24.     In 2006, HR announced that all six of the Recon Boards had failed to promote Wadelton, stating that five of the six Recon Boards had rated her last and the remaining Recon Board had ranked her sixth out of eight.

25.     Wadelton received information that HR may have falsified information regarding these Recon Boards.  Accordingly, on 10 September 2008 she filed a grievance with the Department contesting the results of the Recon Boards.

26.     On 20 November 2008 the Department denied the grievance.  On 1 December 2008, Wadelton appealed the matter to the FSGB.  The Board heard evidence for four days in September and November 2009.  On 14 July 2010, the FSGB ruled in Wadelton's favor, finding that the existence of "serious deficiencies and irregularities in the operation of each of the six recon boards which, taken together, rebutted the presumption that the boards were conducted with regularity, and prevented the [Foreign Service Grievance] Board from crediting their results."

5

27.     Among the deficiencies and irregularities found by the FSGB were, among other things: the destruction of records necessary to evaluating the promotion decisions; convening the promotion boards with members absent, yet asking all members to certify that the results were accurate; submitting certificates of results with the signature of HR officials who did not participate in the decisions; and reporting the results of three of the six boards before they had even met.

28.     The FSGB remanded her grievance to be considered by six new Recon Boards.

29.     On 7 January 2011, because of the FSGB's failure to provide her with the relief she requested, Wadelton filed the case *Wadelton v. Clinton*, No. 11-49 (D.D.C.).

30.     On 1 March 2011 HR reported to the FSGB that that it had convened six[1] new Recon Boards, all of which improbably ranked Wadelton last or next-to-last, identically to the previous Recon Boards.  As a result of this report, the FSGB found against Wadelton, and she was terminated from the Foreign Service.  This is the current subject of the case *Wadelton v. Clinton*.

### *Government Investigations into Wadelton's Allegations*

31.     In or about April 2006, October 2006, January 2007, and August 2008, Wadelton again requested that the OIG investigate the HR staff's wrongful actions.

32.     From 2007-2009, the Office of Special Counsel ("OSC") also conducted an investigation into HR at Wadelton's behest.

33.     During this time, Wadelton also provided Congressmen, Senators, and House and Senate Committees with information about HR activities.  As a result, Henry Hyde, the

---

[1] It actually convened *eight* Recon Boards because it claimed to have "accidentally destroyed" the scoresheets from two of them and reconvened two new ones.

Chairman of the House Foreign Affairs Committee, requested that the Department investigate Wadelton's allegations, as did Congressman Jim Moran.

34.     In March 2010, six months before the beginning of the FSGB hearing on Wadelton's grievance, the OIG issued a report entitled, "Review of the Integrity and Fairness of the Foreign Service Selection Board Process."

35.      This OIG Report substantiated Wadelton's allegations—made to the FSGB, Congress, and others—that: 1) the Department did not have any procedures at all governing Recon Boards; 2) final published promotion lists prepared by HR were sometimes "at variance with" rankings that the Recon Board members actually gave to candidates; 3) despite HR's claims to the contrary, Recon Board members did not always certify final results of deliberations; 4) it was quite possible for personal bias to emerge in the selection board process, including by removing documents from officer's files and placing other documents in the files improperly; 5) many officers had complained of such bias; and 6) HR sometimes falsely certified the results of Recon Boards' deliberations.

36.     OIG recommended thirteen steps to be taken to fix HR's problems.  Upon information and belief, HR has implemented none of them, either for Wadelton's second round of Recon Boards or otherwise.

37.     Wadelton remains consistently in contact with Members of Congress through this entire process to inform them of the ongoing problems at HR.

38.     As a direct result of Wadelton's efforts, on 9 May 2012 Chairwoman Ileana Ros-Lehtinen and Ranking Member Howard Berman of the House Foreign Affairs Committee instructed the Government Accountability Office ("GAO"), the investigative arm of Congress, to

"investigate the use of any wrongful and/or illegal conduct relating to employment practices in the Foreign Service at the Department of State."

39.     On 31 July 2012 GAO informed State of its impending investigation, which was slated to start immediately.

40.     Upon information and belief, this GAO investigation is still ongoing.

*Media Coverage*

41.     On 23 January 2008 Patricia Kushlis, a veteran international affairs blogger, published her first blog article discussing "continuing Human Resources problems at the State Department." She has now published twenty-one articles in this series, which are indexed on one page at http://whirledview.typepad.com/whirledview/the-state-of-state.html (last accessed Mar. 31, 2013).

42.     On 14 March 2012 Ms. Kushlis published her first of five articles about Wadelton's case, which she refers to as "Joan's case." These five articles are attached in their entirety as Ex. A.

43.     Ms. Kushlis estimates that several thousand people have read the articles about "Joan's case" since they were published.

44.     On 1 December 2012 Jason Leopold, Lead Investigative Reporter for Truthout, indicated an interest in writing "an in-depth story on Ms. Wadelton's case and its place in the greater picture of State Department bureaucracy."

45.     Other major media outlets have also expressed interest in covering this matter, especially in the wake of the current scandals involving the Department.

## FIRST CAUSE OF ACTION

## (CONSTRUCTIVE RECORDS DENIAL – F-2012-31456)

46.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

47.     On 17 July 2012 Wadelton submitted to State a FOIA/PA request for all Office of the Legal Adviser records about her created since 2002.

48.     On 19 July 2012 State acknowledged receipt of this request and assigned it Request No.  F-2012-31456.

49.     On 4 February 2013 Truthout informed State that it was joining Wadelton in this FOIA/PA request as a co-requester with her permission.  In this letter, Plaintiffs formally requested expedited processing of this request, primarily citing Ms. Kushlis' coverage of the matter and the GAO investigation.

50.     On 22 March 2013 State informed Plaintiffs that it had accepted Truthout as a co-requester but had denied their request for expedited processing.

51.     As twenty working days have elapsed without a substantive determination by State, Plaintiffs have exhausted all required administrative remedies.

52.     Plaintiffs have a legal right under FOIA/PA to obtain the information they seek, and there is no legal basis for the denial by State of said right.

## SECOND CAUSE OF ACTION

## (CONSTRUCTIVE RECORDS DENIAL – P-2012-37167)

53.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

54.     On 1 October 2012 Wadelton submitted to State a FOIA/PA request for all "emails or other documents pertaining to her from 2000-present maintained or created by the Bureau of Human Resources or, in the case of emails, in which a Bureau of Human Resources employee or contractor was a sender or recipient."

55.     On 1 October 2012 State acknowledged receipt of this request and assigned it Request No.  P-2012-37167.

56.     On 4 February 2013 Truthout informed State that it was joining Wadelton in this FOIA/PA request as a co-requester with her permission.  In this letter, Plaintiffs formally requested expedited processing of this request, primarily citing Ms. Kushlis' coverage of the matter and the GAO investigation.

57.     On 22 March 2013 State informed Plaintiffs that it had accepted Truthout as a co-requester but had denied their request for expedited processing.

58.     As twenty working days have elapsed without a substantive determination by State, Plaintiffs have exhausted all required administrative remedies.

59.     Plaintiffs have a legal right under FOIA/PA to obtain the information they seek, and there is no legal basis for the denial by State of said right.

### THIRD CAUSE OF ACTION

### (RECORDS DENIAL – P-2012-37168)

60.     Plaintiffs repeat and reallege the allegations contained in all paragraphs set forth above.

61.     On 1 October 2012 Wadelton submitted to State a FOIA/PA request for all "emails or other documents pertaining to her from 2004-present maintained or created by the

Office of the Under Secretary for Management or, in the case of emails, in which an Office of

the Under Secretary for Management employee or contractor was a sender or recipient."

62.     On 1 October 2012 State acknowledged receipt of this request and assigned it

Request No.  P-2012-37168.

63.     On 29 January 2013 State informed Wadelton that it had identified eighteen

responsive records and that it was releasing eight records in full, withholding six records in full,

and still coordinating with other offices regarding the remaining four records.

64.     On 4 February 2013 Truthout informed State that it was joining Wadelton in this

FOIA/PA request as a co-requester with her permission.  In this letter, Plaintiffs formally

requested expedited processing of this request, primarily citing Ms. Kushlis' coverage of the

matter and the GAO investigation.

65.     On 14 February 2013 Plaintiffs appealed State's withholdings and formally

requested expedited processing of the appeal.  State acknowledged this appeal on 27 February

2013.

66.     On 22 March 2013 State informed Plaintiffs that it had accepted Truthout as a co-

requester but had denied their request for expedited processing.

67.     As twenty working days have elapsed without a substantive determination by

State, Plaintiffs have exhausted all required administrative remedies.

68.     Plaintiffs have a legal right under FOIA/PA to obtain the information they seek,

and there is no legal basis for the denial by State of said right.

## FOURTH CAUSE OF ACTION

## (EXPEDITED PROCESSING DENIAL)

69.     Plaintiff repeats and realleges the allegations contained in all paragraphs set forth above.

70.     On 4 February 2013 Plaintiffs formally requested expedited processing of all three FOIA/PA requests discussed above.

71.     On 14 February 2013 Plaintiffs formally requested expedited processing of the appeal of FOIA/PA Request No. P-2012-37168.

72.     On 22 March 2013 State denied Plaintiffs' requests for expedited processing.

73.     Plaintiffs have demonstrated a compelling need for records responsive to the requests at issue in this action.

74.     Specifically, Truthout, a media outlet primarily engaged in disseminating information, has demonstrated an urgency to inform the public concerning actual or alleged Federal Government activity.

75.     Plaintiffs have a legal right under FOIA to have their requests processed in an expedited fashion, and there is no legal basis for the denial by State of said right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Joan Wadelton and Truthout pray that this Court:

(1)     Order the Department of State to provide all responsive records to them;

(2)     Order the Department to process the FOIA/PA requests and appeal at issue in this action in an expedited fashion;

(3)     Order preliminary and permanent injunctive and/or declaratory relief as may be appropriate;

(4)     Award reasonable costs and attorneys' fees as provided in 5 U.S.C. §

552(a)(4)(E), 552a(g)(2)(A), 28 U.S.C. § 2412(d), or any other applicable law;

(5)     Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

(6)     Grant such other relief as the Court may deem just and proper.

Date:   April 1, 2013

Respectfully submitted,

Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
1200 South Courthouse Road
Suite 124
Arlington, VA  22204
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiffs*