# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOAN WADELTON** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Civil Action No. 13-0412 (ESH)** |
| | ) |
| **DEPARTMENT OF STATE,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiffs Joan Wadelton and Truthout have filed suit pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, the Privacy Act, 5 U.S.C. § 552a *et seq.*, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651, seeking to compel the United States Department of State to produce certain documents pertaining to Wadelton on an expedited basis.  (*See* Complaint ("Compl.") [ECF No. 1] at 1, 12.) Plaintiffs filed a motion for a preliminary injunction simultaneously with their filing of the complaint.  For the reasons stated below, the Court will deny plaintiffs' motion.

## BACKGROUND

Wadelton joined the Foreign Service in 1980 and worked her way up to the highest rank short of the Senior Foreign Service.  (*See* Compl. ¶ 7.)  She has served in Iraq, among other places, and has been assigned to several prestigious posts.  (*See* Compl. ¶¶ 9-13.)  Wadelton alleges that she has been treated unfairly by the State Department's Bureau of Human Resources ("BHR") since 2000, culminating in her termination in 2011 in retaliation for her whistleblowing activities regarding problems in the Foreign Service promotion process.  (*See* Compl. ¶¶ 14-40; Plaintiff's Motion for a Preliminary Injunction ("Pl. Mot.") [ECF No. 3] at 1.)  Truthout is a

news media organization that intends to publish a story about Wadelton's case.  (*See* Pl. Mot. at

4).  The State Department has recognized Truthout as co-requester on each of Wadelton's FOIA

requests.  (*See* Compl. ¶¶ 50, 57, 66, 74.)

Wadelton and Truthout have made three FOIA requests pertaining to Wadelton's

employment as a Foreign Service officer:

(1) July 17, 2012 request for all Office of the Legal Advisor records created about
    Wadelton since 2002;

(2) October 1, 2012 request for all emails and other documents pertaining to Wadelton
    from 2000-present maintained or created by BHR or in which a BHR employee or
    contractor was a sender or recipient; and

(3) October 1, 2012 request for all emails or other documents pertaining to Wadelton
    from 2004-present maintained or created by the Under Secretary of Management
    ("USM") or in which a USM employee or contractor was a sender or recipient.

(*See id*. ¶¶ 47, 54, 61.)  In response to this third request, the State Department informed plaintiffs

that it has identified eighteen responsive records and will release eight in full, withhold six in

full, and coordinate with other offices regarding the remaining four records.  (*See id*. ¶ 63.)  On

February 4, 2013, plaintiffs requested expedited processing of all three requests.  (*See id*. ¶ 64.)

On February 14, 2013, plaintiffs appealed the State Department's withholdings and requested

expedited processing of the appeal.  (*See id*. ¶ 65.)  On March 22, 2013, the State Department

denied the request for expedited processing.  (*See id*. ¶ 72.)  Plaintiffs filed suit and moved for a

preliminary injunction to force the State Department to process all three FOIA/PA requests and

the appeal in expedited fashion.

## ANALYSIS

### I.  Legal Standard

In considering a plaintiff's request for a preliminary injunction, the Court must weigh

four factors: "(1) whether the plaintiff has a likelihood of success on the merits; (2) whether the

plaintiff would suffer irreparable injury were an injunction not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest." *Al-Fayed v. Cent. Intelligence Agency*, 254 F.3d 300, 303 (D.C. Cir. 2001).

"In deciding whether to grant an injunction, the district court must balance the strengths of the requesting party's arguments in each of the four required areas.  If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Off. Of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).  However, the Court of Appeals requires the "moving party to demonstrate at least 'some injury,'" *id.*, and "[w]hen a plaintiff has not shown a likelihood of success on the merits, there is no need to consider the remaining factors." *Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dept. of Hous. & Urban Dev.*, 639 F.3d 1078, 1088 (D.C. Cir. 2011).

## II.     Applying the Four Preliminary Injunction Factors

### A.     *Likelihood of Success on the Merits*

With respect to the first and most important factor in this case, FOIA directs agencies to provide expedited processing when a requestor demonstrates "compelling need."  5 U.S.C. § 552(a)(6)(E)(i)(II).  FOIA defines "compelling need," in relevant part, as meaning "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v).  A district court reviews an agency's denial of expedition under the *de novo* standard, and does not

defer to agency determinations of "compelling need." *See Al-Fayed*, 254 F.3d at 307, 308.[1]  The

requestor bears the burden of proof.  *See id*. at 305 n.4.

> The State Department does not contest that Truthout is "primarily engaged in

disseminating information" or that the subject of the records concerns "actual or alleged Federal

Government activity."  The only disputed issue, therefore, is plaintiffs' claim of urgency.  The

Court of Appeals has held that

> in determining whether requestors have demonstrated "urgency to inform," and
> hence "compelling need," courts must consider at least three factors: (1) whether
> the request concerns a matter of current exigency to the American public; (2)
> whether the consequences of delaying a response would compromise a significant
> recognized interest; and (3) whether the request concerns federal government
> activity.  The legislative history also indicates that "[t]he credibility of a
> requestor" is a relevant consideration.

*Al-Fayed*, 254 F.3d at 310 (internal quotation marks and citations omitted).

> Plaintiffs – using the language of the State Department's regulations, rather than the

Court of Appeals' standard – argue that "[t]he information responsive to these requests definitely

has a particular value that will be lost if not disseminated quickly."  (Pl. Mot. at 4.)  They base

this assertion on four facts: (1) Wadelton's story is "the subject of a widely-read series of articles

written by veteran international affairs blogger Patricia Kushlis"; (2) Wadelton's allegations

---

[1] The Court of Appeals, however, noted that FOIA gives agencies "latitude to expand the criteria for expedited access" beyond cases of "compelling need," and such regulations would be entitled to deference.  *Al-Fayed*, 254 F.3d at 307 n.7 (internal quotation marks and citation omitted). However, the State Department's relevant regulations essentially mirror FOIA: "The information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity."  22 C.F.R. § 171.12(b)(2).  The regulations also provide fuller definitions of the relevant terms, for example defining "urgently needed" as follows: "The information has a particular value that will be lost if not disseminated quickly. Ordinarily this means a *breaking news story of general public interest*. Information of historical interest only, or information sought for litigation or commercial activities would not qualify, nor would a news media publication or broadcast deadline unrelated to the breaking nature of the story."  *Id*. (emphasis added).  Therefore, the Court need not defer to the State Department's definition of "compelling need," since it finds it to be consistent with the case law and with the Circuit Court's interpretation of the statute.

gave rise to a 2010 investigation by the State Office of the Inspector General ("OIG"); (3) there is an ongoing investigation by the Government Accountability Office ("GAO") into Wadelton's allegations; and (4) Truthout "intends to publish 'an in-depth story on Ms. Wadelton's case and its place in the greater picture of State Department bureaucracy.'"  (Pl. Mot. at 4.)

        None of these facts support a finding that there is an "urgency to inform."  That articles on this topic appear on a specialized blog dedicated to the Foreign Service and are read by "several thousand people" (Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction ("Def. Opp.") [ECF No. 7] at 11), does not demonstrate that the information is a "matter of a current exigency to the American public."  *Al-Fayed*, 254 F.3d at 310 (internal quotation marks and citation omitted).  This issue may be of concern to the Foreign Service community, but that does not mean that it is "a breaking news story of general public interest." 22 C.F.R. § 171.12(b)(2).  Nor does Truthout's intent to publish a story about Wadelton's case demonstrate that the topic is of general public interest, or that "delaying a response would compromise a significant recognized interest."  *Id.*  The fact that OIG conducted an investigation in 2010 certainly does not give rise to any sense of urgency.  *See Tripp v. Dep't of Def.*, 193 F. Supp. 2d 229, 242 (D.D.C. 2002) (events at issue took place over three years ago and no breaking news story on the topic).  Finally, an ongoing GAO investigation indicates that *someone* is concerned about this topic, but the GAO does many hundreds of investigations each year, many on arcane aspects of the functioning of the federal government that could hardly be said to be of great interest to the American public.  As the Court of Appeals noted in *Al-Fayed*, "[a]lthough these topics may continue to be newsworthy, none of the events at issue is the subject of a currently unfolding story."  *Al-Fayed*, 254 F.3d at 310.

By way of contrast, courts have found a "compelling need" to exist when the subject matter of the request was central to a pressing issue of the day, such as public debate over the renewal of the USA PATRIOT Act, *see Amer. Civil Liberties Union v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004); a breaking news story about domestic surveillance of anti-war protesters, *see Am. Civil Liberties Union of N. Cal. v. United States Dep't of Def.* ("*ACLU-NC v. DOD*"), No. C 06-1698, 2006 WL 1469418, at *6 (N.D. Cal. May 25, 2006); and an active debate over the reauthorization of certain Voting Rights Act provisions. *See Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005). The controversy that Wadelton suggests exists over the Foreign Service promotion process bears no resemblance to these matters of genuine widespread public concern.

While this motion was pending, plaintiffs supplemented the record with an article that recently appeared on The Atlantic magazine's website, but the submission merely highlights the contrast between this case and those in which "compelling need" has been found. (*See* Notice of Filing of Additional Exhibit [ECF No. 9] (attaching D.B. Grady, *The State Department Need a Watchdog – Now, Not Later*, Atlantic, Apr. 23, 2013, http://www.theatlantic.com/nationa/archive/2013/04/the-state-department-needs-a-watchdog-now-not-later/275198).) In those cases, plaintiffs successfully demonstrated the existence of widespread media interest by citing nearly one thousand hits in the Nexis database for relevant articles during the previous ninety days, *see Gerstein v. Cent. Intelligence Agency*, No. C 06-4643, 2006 WL 3462658, at *4 (N.D. Cal. Nov. 29, 2006), or cited numerous articles and reports, including many in mainstream news sources such as the New York Times, the Washington Post, the Los Angeles Times, and/or the San Francisco Chronicle. *See ACLU-NC v. DOD*, 2006 WL 1469418, at *1-2; *Amer. Civil Liberties Union of N. Cal. v. Dep't of Justice*, No.

C 04-4447, 2005 WL 588354, at *5-7 (N.D. Cal Mar. 11, 2005).  Plaintiffs' submission of one

article, a series of posts on a specialized blog, and plaintiff Truthout's representation that it

"intends" to publish a story do not come close to demonstrating a comparable level of media

interest.

In sum, the Court concludes that plaintiffs are not likely to succeed on the merits of their

claim to expedited processing.  Therefore, there is no need for the Court to consider the

remaining factors.  However, even if these were to be considered, they would not favor plaintiffs.

B.      *Irreparable Injury to Plaintiffs*

Plaintiffs' arguments regarding the irreparable injury prong are essentially the same as

their arguments for compelling need.  They argue that there is a "public discussion taking place

now" and a citizen has the "right to engage in the public debate *at the time* of the public debate."

(Pl. Mot. at 5, 6) (emphasis in the original).  For the reasons articulated above, the Court does not

find that there is a robust public discussion taking place on this topic at this time, such that

plaintiffs would be harmed by receiving the information they seek at a later date.

C.      *Lack of Injury to the State Department*

Plaintiffs suggest that their requests should not cause any hardship to the State

Department.  State has not made any representations in this regard, but the Court is well aware

that many FOIA requesters are standing in line waiting for the agency to fulfill their obligations

under FOIA[2] and sequestration will undoubtedly only diminish the agency's ability to respond in

the future to FOIA requests in timely fashion.

---

[2] For fiscal year 2012, the State Department (including OIG) had 8,611 FOIA requests pending at the outset; received 18,521 new requests; processed 15,343 requests; and ended with 11,789 requests still pending.  *See* U.S. Department of State Freedom of Information Act Annual Report Fiscal Year 2012, at 10, http://www.state.gov/documents/organization/205272.pdf.

D.      *Public Interest*

Plaintiffs argue that a preliminary injunction will be in the public interest, based on little more than the core purpose of FOIA being to "allow the public to be informed about 'what their government is up to'" – in this case, with respect to the Foreign Service promotion process.  (Pl. Mot. at 6 (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772-73 (1989)).)  This explanation does nothing to distinguish plaintiffs' FOIA request from any other FOIA request.  Therefore, the Court finds that plaintiffs fail to satisfy the public interest prong.

## CONCLUSION

For the reasons stated above, the Court finds that plaintiffs are not entitled to a preliminary injunction and it will therefore deny plaintiffs' motion.  A separate Order accompanies this Memorandum Opinion.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: April 25, 2013