**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JOAN WADELTON, *et al*, | ) |
|  | ) |
|  | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | )   Civil Action No. 13-cv-412 (TSC) |
|  | ) |
| DEPARTMENT OF STATE, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## MEMORANDUM OPINION

Plaintiff Joan Wadelton is a retired Foreign Service Officer involved in litigation against the Department of State ("State") concerning her non-promotion. In this Freedom of Information Act ("FOIA") action, joined by the progressive blog Truthout, she seeks documents about her which were maintained in various State Department offices. Defendant has filed a motion for partial summary judgment as to records maintained by the Bureau of Human Resources ("HR") and the Office of the Under Secretary for Management ("Management"). For the reasons set forth below, the court DENIES the motion.

## I.      BACKGROUND

On October 1, 2012 Wadelton submitted a FOIA request for "copies of all [State Department] emails or other documents pertaining to [Wadelton] from 2000-present maintained or created by the Bureau of Human Resources or, in the case of emails, in which a Bureau of Human Resources employee or contractor was a sender or recipient." (Def. Statement of Material Facts ¶ 1).[1] She also requested copies of all "emails or other documents pertaining to [her] from 2004-present maintained or created by the Office of the Under Secretary for

---

[1] Plaintiffs do not dispute any of the material facts stated by Defendant. (Pls. Opp'n at 1).

Management or, in the case of emails, in which an Office of the Under Secretary for Management employee or contractor was a sender or recipient." (*Id.* ¶ 2).  HR has several components, three of which were searched for responsive records: the Grievance Staff, the Office of Performance Evaluation, and the Office of Retirement.  (*Id.* ¶ 9).  The Director of Grievance, Melinda Chandler, "was knowledgeable of the request at issue here and of [Grievance] records systems," and searched the office's electronic systems, including the office's shared drive, her own e-mails, Word documents, and personal hard drive, using the term "Wadelton." (*Id.* ¶ 10).  She also searched the office's paper files, "which are maintained by name." (*Id.*).  Grievance has a file drawer labeled with Wadelton's name.  (*Id.*).  Two staff members from Performance Evaluation searched that office's shared drive, their own emails, Word documents, and personal hard drives using the search terms "Wadelton" and "Joan." (*Id.* ¶ 11).  They also searched the office's paper files, which are organized by name.  (*Id.*).  The Chief Policy Advisor of Retirement searched the office's shared drive, and the Advisor's emails, Word documents, and personal hard drive for the term "Wadelton," and also did a "page-by-page search of Wadelton's electronic retirement folder."  Retirement does not maintain paper records. (*Id.* ¶ 12).

Patrick Kennedy, the Under Secretary for Management, searched his emails using the term "Wadelton." (*Id.* ¶ 15).  Management "does not maintain paper records in their office." (*Id.*).  Management also conducted a search of the Retired Records Inventory Management System, which is a searchable database of record lot files stored in the Records Service Center. (*Id.* ¶ 17).  Of the responsive records located through these searches, State withheld documents under six exemptions, as outlined in the declaration of John Hackett (ECF No. 44-1) and accompanying *Vaughn* index (ECF No. 44-2).  Arguing that its search was adequate and that its

withholdings are justified, Defendant seeks partial summary judgment as to the HR and Management documents.

## II.    LEGAL STANDARD

Summary judgment is appropriate where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.*  The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified."  *Taxpayers Watchdog, Inc., v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987).

FOIA cases are "typically and appropriately" decided on motions for summary judgment.  *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (citations omitted).  Upon an agency's request for summary judgment in its favor on the grounds that it has fully discharged its FOIA obligations, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; only after an agency proves that it has fully discharged its FOIA obligations is summary judgment

appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C. Cir. 1983)).

In cases concerning the applicability of exemptions and the adequacy of an agency's search efforts, summary judgment may be based solely on information provided in the agency's supporting declarations. *See, e.g., ACLU v. U.S. Dept. of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 838 (D.C. Cir. 2001). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU*, 628 F.3d at 619 (citations omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)) (internal quotation marks omitted). However, a motion for summary judgment should be granted in favor of the FOIA requester "[w]hen an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (quoting *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992)) (internal quotation marks omitted).

In considering the adequacy of an agency's search in response to a FOIA request,

> [t]he question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*. The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.

*Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (internal citations omitted).

An agency may prove the reasonableness of its search through a declaration of a responsible

agency official, so long as the declaration reasonably details the documents and justifications for

nondisclosure, and is not controverted by contrary evidence or evidence of bad faith. *Military*

*Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Although the agency is not required

to search every record system, it must make a good faith effort to reasonably search systems that

are likely to contain records where the requested information is likely to be found. *Oglesby v.*

*Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The agency declaration can demonstrate

reasonableness by "setting forth the search terms and the type of search performed, and averring

that all files likely to contain responsive materials (if such records exist) were searched."

*Sanders v. Obama*, 729 F. Supp. 2d 148, 155 (D.D.C. 2010), *aff'd sub nom.*, *Sanders v. U.S.*

*Dep't of Justice*, 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011) (citation omitted).  Once

an agency has provided adequate affidavits, the burden shifts to the plaintiff to demonstrate that

the agency did not make good faith search. *Id.*  The presumption of good faith "cannot be

rebutted by purely speculative claims about the existence and discoverability of other

documents." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation

marks omitted).

### III.    ANALYSIS

#### A.  Adequacy of State's search

##### i.  Search of HR

Plaintiffs challenge the decision to limit the search in Grievance by searching only

Chandler's personal electronic files.  (Pls. Opp'n at 4).  Given that Grievance maintained an

entire filing cabinet drawer labeled "Wadelton," Plaintiffs argue it was "patently unreasonable"

to search only the Director's email account and personal computer files and not those of other

Grievance employees.  (*Id.*).  Indeed, Plaintiffs list a number of other Grievance staff members (and staff members from other HR components) whom they allege were involved in Wadelton's grievances, and note that Wadelton's original FOIA request specifically sought all emails in which an HR "employee or contractor was a sender or recipient," not only Chandler's emails. (*Id.* at 4-5.).

Defendant responds that its search limitations were appropriate because Chandler was "the individual with supervisory responsibilities over the work of the office and was also a representative of [Grievance] who worked closely with other parts of HR and with the Office of Legal Adviser ("L") on part of Plaintiff's grievances (specifically, appeal number FSGB 2008-051)."  (Def. Reply at 4-5 (citing Second Hackett Decl. ¶ 6)).  Although it is true that Defendant is entitled to limit its search to locations most likely to contain responsive documents, *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 10-11 (D.D.C. 2011) (citation omitted), Defendant's justification for limiting its search in this case raises more questions than it answers, and does not confirm that Chandler's files were the only files "likely to contain responsive documents."  Was Chandler the only "representative of [Grievance] who worked closely with other parts of HR and with [L]"?  Did another Grievance representative work on the "part[s] of Plaintiff's grievances" on which Chandler did not work?  Did those over whom Chandler had "supervisory responsibilities" ever exchange emails about Wadelton without including Chandler in the communications or create documents never given to Chandler?  Without answers to these questions, the court cannot conclude the search was reasonably tailored.

Defendant also argues that its search limitation was appropriate because at the time of the search Chandler "was the only current [Grievance] employee who had been involved with any matters concerning [Wadelton]."  (Def. Reply at 5).  Again, this justification raises more

questions than it answers.  Did State preserve documents from former employees who dealt with matters concerning Wadelton? State's affiant John Hackett does not state whether and for how long State preserves the emails or other documents of employees who leave the Department.  If documents of former employees existed at the time of the search, it makes no difference whether the individuals who created or maintained those documents were still employed by the State Department because FOIA imposes a disclosure obligation only as to documents in the agency's possession at the time of the FOIA request. *See Weisberg*, 705 F.2d at 1363 (holding FOIA requires agencies to disclose only records "for which [they] have chosen to retain possession or control" (quoting *Kissinger v. Reporters Comm.*, 445 U.S. 136, 151-52 (1980)).   If on the other hand, those emails and files were not preserved, the timing of their destruction becomes dispositive.  It is true that "FOIA does not impose a document retention requirement on agencies," *Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 59, 66 (D.D.C. 2003), and does not "obligate agencies to retain all records" or "establish specified procedures designed to guide disposal determinations."  *Green v. Nat'l Archives & Records Admin.*, 992 F. Supp. 811, 818 (E.D. Va. 1998); *see also Anderson v. U.S. Dep't of Justice*, 518 F. Supp. 2d 1, 9-10 (D.D.C. 2007) ("An agency does not violate the FOIA for its failure to locate records destroyed in accordance with an agency's normal retention policy.").  However, the agency *is* under an obligation not to destroy records after it receives a FOIA request.  *Laughlin v. C.I.R.*, 103 F. Supp. 2d 1219, 1223-24 (S.D. Cal. 1999).  Without evidence regarding whether State destroyed the records of these other employees and, if so, at what point in time those records were destroyed, the court cannot yet conclude that State conducted a reasonably thorough search.[2]

---

[2] State appears to argue that, because Grievance "office policy required employees to print record e-mails and save them in the office's paper files," any emails on which Chandler was not copied would nonetheless be preserved in the file drawer labeled "Wadelton" and therefore additional searches were not necessary and there was no loss of records from the deletion of retired employees' emails.  (Def. Reply at 5 (citations omitted)).  State does not offer a

Finally, Plaintiffs challenge the decision to have two unnamed staff members in the Office of Performance Evaluation search their emails, Word documents and personal hard drives "without giving any reason for limiting the search to only those two employees' records." (Pls. Opp'n at 5 n.3). Defendant does not directly respond to this argument. Its declaration states that these two individuals "were knowledgeable of" the FOIA request and the records systems of the Office (Hackett Decl. ¶ 9), but does not provide any information from which the court can conclude that these two individuals were the only individuals in that office likely to have emails or other electronic documents about Wadelton. Summary judgment must therefore be denied as to the adequacy of the Performance Evaluation search as well.

### ii. Search of Management

Plaintiffs agree it was reasonable to limit the search in Management to only the documents of Under Secretary Kennedy. (Pls. Opp'n at 5). Plaintiffs do not agree, however, that the search of Kennedy's unclassified emails, and not of any other type of record, was sufficient. State initially justified the decision to search for only emails by noting that Management does not "maintain paper records in their office." (Hackett Decl. ¶ 12). In response to Plaintiffs' argument that this limitation was improper, State "clarifie[d]" that Kennedy "does not maintain paper records in his office." (Def. Reply at 5 (quoting 2d Hackett Decl. ¶ 7)). Neither statement confirms the reasonableness of the decision to search for only emails. Does Kennedy maintain paper records outside of his office? Does Management as an entity maintain paper records outside of its office? Without additional clarity, State's representations seem to suggest that no one in Management ever prints and preserves any

---

definition of "record e-mail," so the Court cannot conclude whether this manner of retention renders the decision not to search the emails of other Grievance employees (to the extent those emails were or should have been preserved) reasonable.

documents.  Since the court does not know if Management has any paper records maintained outside of its office the court cannot conclude the search this portion of the search was conducted reasonably.

### iii.   Search by "Conflicted" Individuals

Plaintiffs, citing no case law specifically on point, contend that the decision "to task Chandler and Kennedy with searching their own records for information about their own alleged misconduct implicates a major conflict of interest," and therefore the search cannot be said to be "reasonably calculated to uncover all relevant documents."  (Pls. Opp'n at 6).  Defendant, also citing no relevant case law, counter that there is no rule barring individuals alleged to be involved in government misconduct from conducting searches in response to FOIA requests concerning that alleged misconduct.  (Def. Reply at 3-4).  While it is clear that in discovery conducted pursuant to the Federal Rules of Civil Procedure, a search conducted without the oversight of an attorney might create problems, *see, e.g.*, *Zubulake v. UBS Warburg, LLC*, 229 F.R.D. 422, 431-34 (S.D.N.Y. 2004) (noting *counsel's* ongoing obligation to ensure preservation and collection of relevant material); *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 290 (S.D.N.Y. 2009) (providing that "[a]ttorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search") (citations omitted), it is not clear that an analogous rule applies in the context of FOIA.

Many, if not most, FOIA searches are conducted by those who had a hand in creating the sought-for documents.  *Physicians for Human Rights v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 161-62 (D.D.C. 2009) (noting a requirement that "when all other sources fail to provide leads to the missing record, agency personnel should be contacted if there is a close nexus between the person and the particular record" (quoting *Valencia-Lucena v. U.S. Court Guard*, 180 F.3d 321, 328 (D.C. Cir. 1999)) (alterations in original omitted).  Although no court appears to have

directly addressed the question, searches conducted by those who created or maintained the documents—even against a backdrop of allegations of wrongdoing—have been deemed reasonable when challenged. *See, e.g.*, *Bonilla v. U.S. Dep't of Justice*, 798 F. Supp. 2d 1325, 1330 (S.D. Fla. 2011) (holding the DOJ search was reasonable when FOIA Paralegal Specialist emailed all personnel "seeking responsive records, [and] requested that the Assistant United States Attorney currently assigned to Plaintiff's criminal case to search that case file . . . ."). The requesters in *Defenders of Wildlife* sought records related to conflicts of interest of the Deputy Secretary of the Interior, after reports emerged that he might have violated several ethics rules. 314 F. Supp. 2d at 5. The court addressed a number of arguments about the adequacy of the search, including an argument that the Deputy Secretary and two members of his staff "may have improperly withheld repetitive documents." *Id.* at 9. Without questioning the reasonableness of having the putative ethics violators search for responsive documents, the court dismissed the challenge for other reasons and confirmed the adequacy of the search. *Id.* at 9-10.

Permitting government employees who created or maintained the requested records to conduct the search for those records, even when the records are sought in order to uncover possible wrongdoing, is logical in light of the presumption of good faith accorded to government officials in the context of conducting FOIA searches. *Fischer v. U.S. Dep't of Justice*, 723 F. Supp. 2d 104, 108 (D.D.C. 2010) ("agency affidavits are afforded a presumption of good faith, and an adequate affidavit can be rebutted only with evidence that the agency's search was not made in good faith" (citations omitted)) (internal quotation marks omitted). Plaintiffs' assumption that Chandler and Kennedy must have acted in bad faith because they were at one point named as defendants in Wadelton's lawsuit against the Government does not rise to the level of proof necessary to overcome this presumption.

**B.  Defendant's Withholdings Under FOIA Exemptions**

To justify its withholdings under various FOIA exemptions, Defendant provided a

declaration (ECF No. 44-1) and an accompanying *Vaughn* index (ECF No. 44-2).  Plaintiffs

argue the court should reject these justifications out of hand "solely based on the overwhelming

preponderance of conclusory allegations" in the Hackett Declaration and *Vaughn* index.  (Pls.

Opp'n at 9).  This argument is not persuasive.  If Defendant had submitted *only* the Hackett

Declaration to justify its withholdings, Plaintiffs' argument might carry more weight, but that is

not the situation at bar.  Instead, the Hackett Declaration outlines State's understanding of the

relevant exemptions, which are then applied to the specific withholdings in a 56-page index (the

*Vaughn* index).  Plaintiffs' further attack on the conclusory nature of Defendant's *Vaughn* index

borders on the frivolous because it is supported by highly selective quotations from the *Vaughn*

index.  For instance, Plaintiffs argue that the following entry from page 30 of the *Vaughn* index

is too general to adequately justify the withholding:

> The release of the withheld information could reasonably be
> expected to chill the frank deliberations that occur when Department
> officials are formulating a strategy for an official response to a
> sensitive matter related to ongoing civil litigation.  For this reason
> this information is protected by the deliberative process privilege
> and is exempt from disclosure under FOIA Exemption 5, 5 U.S.C. §
> 522(b)(5).

(Pls. Opp'n at 9).  If that was the only information provided about the withheld document, the

court might be inclined to agree with Plaintiffs.  However, Plaintiffs have selectively quoted the

*Vaughn* index to make it appear to be more conclusory than it is.  The full entry for that

document confirms that it is an email between a State attorney and a State employee from

January 19, 2011 and states:

> This intra-agency communication between a Department attorney
> and an employee reflects the *details of an employee's request for
> guidance pertaining to the timing of action concerning a request*

11

> *made by Ms. Wadelton*.  The release of the withheld information
> could reasonably be expected to chill the frank deliberations that
> occur when Department officials are formulating a strategy for an
> official response to a sensitive matter related to an ongoing civil
> litigation.  For this reason this information is protected by the
> deliberative process and is exempt from disclosure under FOIA
> Exemption (b)(5), 5 U.S.C. § 552(b)(5).  The Department also
> withheld this information, that relates to on-going litigation, under
> Privacy Act Exemption (d)(5), 5 U.S.C. § 552a(d)(5).

(*Vaughn Index* at 30) (emphasis added).  This is sufficient information to enable the court to

evaluate the asserted exemption, which is all that is required of the Defendant.  *Elec. Frontier*

*Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157, 165 (D.D.C. 2011) (materials supporting

withholding must "give the reviewing court a reasonable basis to evaluate the claim of privilege"

(citing *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006))).

    Having rejected this general attack, the court addresses the two[3] exemptions Plaintiffs

have specifically challenged.

### i.  Attorney-Work Product

    Documents "prepared in anticipation of litigation" are typically not discoverable in civil

litigation and are therefore exempt from production pursuant to FOIA exemption (b)(5).  *Shapiro*

*v. U.S. Dep't of Justice*, 969 F. Supp. 2d 18, 27 (D.D.C. 2013) (citing Fed. R. Civ. P.

26(b)(3)(A).  The doctrine protects "the mental impressions, conclusions, opinions, or legal

theories of an attorney," and "factual materials prepared in anticipation of litigation."  *Tax*

*Analysts v. I.R.S.*, 117 F.3d 607, 616, 620 (D.C. Cir. 1997); *see also FTC v. Grolier, Inc.*, 462

U.S. 19, 28 (1983); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 432 F.3d 366, 371-72 (D.C. Cir.

2005); *Toensing v. U.S. Dep't of Justice*, 999 F. Supp. 2d 50, 58-59 (D.D.C. 2013).

---

[3] Plaintiffs' opposition challenged State's assertion of Exemption (b)(7)(E) to withhold document C05464504.  (Pls. Opp'n at 10).  State withdrew as erroneous its assertion of that exemption and the Court does not address it.  (Def. Reply at 8).

Plaintiffs challenge the assertion of work-product protection over several documents:

- C05421835: State describes this document as a "memorandum listing the requirements for reconstituted board service and describing the procedures to be followed by the Wadelton reconstituted boards.  It was prepared at the direction of a Department of State ("DOS") attorney in anticipation of the Wadelton litigation, designated to be used exclusively in the Wadelton case."  (*Vaughn* index at 1).  Plaintiffs argue no privilege attaches because the document (or perhaps the factual information contained in the document) "would be disclosed in Wadelton's other court case, and there is no indication that anything in this document conveys the drafting employee's privileged thought processes." (Pls. Opp'n at 10). "Factual materials prepared in anticipation of litigation" are shielded from disclosure as work product.  *Tax Analysts*, 117 F.3d at 616, 620; *Judicial Watch*, 432 F.3d at 371-72.  It is not clear, however, what State means when it describes the document as "designated to be used exclusively in the Wadelton case."  If that means it was a document written to be, and actually was, presented to the Court or to Wadelton as plaintiff in her litigation against State, it is not clear that work-product protection would attach to the final draft of that document (if the withheld document is a final draft).  If it is instead a document prepared for internal use by State's attorneys in connection with that litigation, it is clearly protected.  Because some doubt remains, summary judgment as to the justification for withholding this document is improper at this time.

- C05440870, C05440875, and C05440880:  Plaintiffs again rely on a highly selective quotation to from their argument: "These documents are 'timelines of decisions and events.'  Again, this is information which would be disclosed in the other court case." (Pls. Opp'n at 10) (internal citation omitted).  State describes these documents as "timelines of decisions

and events relating to Ms. Wadelton's promotion history, grievances, reconstituted boards, and FSGB activities. The same information is presented in tabular and narrative format. These documents were created by a DOS attorney at the request of the AUSA to prepare the AUSA for her court hearing in the Wadelton case." (*Vaughn* index at 1-2). A document prepared by one attorney for use by another attorney in a court hearing is most assuredly a document prepared in anticipation of litigation. That it contains factual material does not negate the privilege. *See Tax Analysts*, 117 F.3d at 616, 620.

The remaining challenged documents[4] all pertain to investigations by the State Department's Office of the Inspector General (OIG) and the Office of Special Counsel (OSC). Plaintiffs argue, without citation to any case law or factual support, that these documents are not privileged because they were prepared for investigations into "grievances and assertions of impropriety made by Wadelton," and not for litigation. (Pls. Opp'n at 11) (citation omitted). They contend that, because Wadelton and the OIG/OSC lawyers were not maintaining an adversarial relationship at the time of these investigations, no privilege attaches. (*Id.*).

Though it is unsourced, Plaintiffs' argument that work-product protection only applies when "the attorney in question [is] in an adversarial relationship," (Pls. Opp'n at 11) appears to originate from case law analyzing the circumstances under which certain administrative proceedings are considered "litigation" for purposes of applying work-product doctrine. *See Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 221 (D.D.C. 2012) ("the litigation anticipated by the work product can include proceedings before administrative tribunals if they are of an adversarial nature") (citation and internal quotation marks omitted);

---

[4] C05465861, C05465904, C05465909, C05465911,C 05465913, C05465915, C05465917, C05465919, C05465921, C05465924, C05465926, C05465928, C05465931, C05465934, C05465939, C05465947, and C05463441. (Pls. Opp'n at 11). Plaintiffs make arguments applicable to all of these documents, so the Court will address them together.

14

*Willingham v. Ashcroft*, 228 F.R.D. 1, 4-5 (D.D.C. 2005) ("to constitute "litigation," the

proceeding must be adversarial"); *In re Grand Jury Subpoena*, 220 F.R.D. 130, 146 (D. Mass.

2004) (noting that under the Restatement (Third) of Law Governing Lawyers § 87 cmt. H (2000)

"adversarialness is the touchstone" in determining when proceedings are litigation).  The

analysis comes close to, but does not address, the heart of the issue here: whether the OIG and

OSC investigations into Wadelton's complaints of impropriety were conducted in anticipation of

litigation.  It is the existence—not the identities—of adversaries that generates the privilege.  So

long as the investigations were conducted "in anticipation of litigation," it does not matter

against whom that anticipation was litigated.[5]  Moreover, the fact that there was no active

adversarial proceedings at the time the documents were created is not necessarily dispositive.

Determining when a document is prepared "in anticipation of litigation" is, admittedly,

difficult for both litigants and judges.  The D.C. Circuit has instructed that the "testing question"

is whether "in light of the nature of the document and the factual situation in the particular case,

the document can fairly be said to have been prepared or obtained because of the prospect of

litigation." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (citation omitted).  A

document may be protected as created "in anticipation of litigation" any time "litigation is

foreseeable, even if no specific claim is contemplated." *Am. Immigration Council*, 905 F. Supp.

2d at 221 (citing *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992)) (internal quotation

---

[5] That the OSC and OIG were investigating claims made *by* Wadelton does not somehow transform them into *her* attorneys, or attorneys working on her behalf, and thereby obviate any privilege.  In an analogous context, plaintiffs bringing derivative lawsuits on behalf of corporations are not entitled to materials related to the corporation's internal investigation into the merits of that lawsuit unless and until that investigation is placed at issue by the corporation. *See, e.g.*, *In re Perrigo Co.*, 128 F.3d 430, 437-38 (6th Cir. 1997); *In re Oracle Sec. Litig.*, No. 01-988, 2005 WL 6768164, at * 9-10 (N.D. Cal. Aug. 5, 2005) (corporation relying on report of independent director into derivative plaintiffs' allegations of securities law violations waived work-product protection over the report by relying on it in motion to dismiss derivative lawsuit); *Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084, 1099 (D.N.J. 1996) (corporation attempting to defend against Title VII suit by relying on internal investigation waived work-product protection over the investigation documents).

marks omitted).  In some cases, the Circuit has instructed that a "specific claim supported by concrete facts which would likely lead to litigation" must be in the attorney's mind at the time of preparation.  *United States v. ISS Marine Servs., Inc.*, 905 F. Supp. 2d 121, 135 (D.D.C. 2012) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 865 (D.C. Cir. 1980)).  In other cases, the Circuit appears to adopt a more "lenient" standard, "extending work-product protection to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated."  *Id.* (quoting *Schiller*, 964 F.2d at 1208).

The Circuit explained how to reconcile those cases in *In re Sealed Case*, highlighting as the key factor that the attorney creating the document "rendered legal advice in order to protect the client from future litigation about a particular transaction, even though at the time, neither [of the clients] had made any specific claim."  146 F.3d at 885.  In *ISS Marine Services, Inc.* the court, relying on the Circuit's guidance, rejected an assertion of work-product protection over an audit report investigated and written by an internal audit team after two employees raised the possibility of fraud by a foreign affiliate of that party.  905 F. Supp. 2d at 136-37.  Some aspects of the report's creation would have brought it within the scope of the work-product doctrine: it was prepared as an investigation into specific wrongdoing for the purpose of protecting against future litigation.  *Id.* at 136.  However, the court noted that counsel was not involved in creation of the report, that the government was years away from conducting its own investigation, and that there was no indication that the employees who initially reported the possible fraud had any intention of bringing whistleblower claims.  *Id.* at 136-37; *see also Am. Immigration Council*, 905 F. Supp. 2d at 221 (finding no work product protection in a PowerPoint presentation used to train USCI "employees how to interact with private attorneys during USCIS proceedings before adjudicators" because there was no "particular transaction" at issue).

16

Here, it is notable that neither party offers to the court an explanation or argument about aspects of the OSC and OIG investigations: the nature of each office's relationship with the State Department and Wadelton, how the investigations were initiated, the findings of each investigation, the ramifications of the investigations, and so forth.  Wadelton's complaint in her parallel lawsuit against the State Department alleges that in early 2003 she "complained to the [OIG] alleging mismanagement and abuse of position by HR senior management," (ECF No. 49-3 ¶ 69) and in 2006 "requested the OIG investigate the deliberate mistreatment of Wadelton by HR and the suspicious results of the promotion boards reconvened by HR" (*Id.* ¶ 74 ).  She renewed this request in January 2007, and later requested an investigation by the OSC into "HR's deliberate mistreatment and interference with Wadelton's promotions boards." (*Id.* ¶ 77-78).  She subsequently made another complaint to the OSC "in light of a witness who supported Wadelton's claims that the records which served as denying the basis for her promotion were doctored." (*Id.* ¶ 78).  A third complaint to OSC in July 2008 specifically alleged a violation of 18 U.S.C. § 1001(a)(3), (*Id.* ¶ 80), as did an August 2008 complaint to OIG (*Id.* ¶ 81).  Plaintiff alleges that in March 2010, OIG produceda report that was "one in a series of audits, inspections and special reports prepared periodically as part of the OIG's responsibility to promote effective management, accountability and positive change in the Department." (*Id.* ¶ 85).

Most notable is the fact that Plaintiff alleges she expressly reported, to both the OIG and OSC, suspected violations of the law.  These reports followed years of challenging the validity of State's decision concerning her non-promotion and attempts to revisit that decision.  It is clear, then, that both OSC and OIG were investigating "particular transaction[s]," such that documents related to the investigations ought to fall within the scope of the work-product protection. *See Am. Immigration Council*, 905 F. Supp. 2d at 16; *see also Kelly v. C.I.A.*, No. 00-cv-2498, 2002

WL 34463900, at *16 (D.D.C. Aug. 8, 2002) (holding documents, including memoranda to the agency's inspector general about claims of improper surveillance by individuals, were protected under the work-product privilege).

### ii.  Deliberative Process Privilege

The deliberative process privilege shields from disclosure agency materials that are "both 'predecisional' and a part of the 'deliberative process.'"  *McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011) (citations omitted).  A document is predecisional if it "was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made."  *Petroleum Info. Corp.,* 976 F.2d at 1434 (citations omitted) (internal quotation marks omitted).  A document is part of the deliberative process when it "makes recommendations or expresses opinions on legal or policy matters."  *Vaughn v. Rosen,* 523 F.2d 1136, 1144 (D.C. Cir. 1975).

Plaintiffs challenge the assertion of the deliberative process privilege over a number of documents which are "handwritten notes and comments made by promotion panel members about candidates for promotion prior to a decision being made on selection.  The raters' remarks in these documents may or may not reflect their final decisions on the individuals being considered." (*Vaughn* index at 6-7, 11, 48).[6]  Because the remarks in the document "may or may not reflect" the final decision on promotion, the Plaintiffs submit that the deliberative process privilege "may or may not" apply, and the Government has therefore failed to meet its burden in establishing the applicability of the exemption.  (Pls. Opp'n at 12).  It appears that, generally

---

[6] C05464292, C05464311, C05464410, C05464419, and C05464688 are described in a substantially similar way. (*Vaughn* index at 11).  C05469074, C05469076, C05469080, C05469084, C05469091, C05469095, C05469101, C05469103, C05469133, and C05469181 contain "the board members' hand-written comments and personal notes pertaining to one of Ms. Wadelton's reconstituted boards, reflecting pre-decisional and deliberative comments regarding a final decision on promotion."  (*Vaughn* index at 48).  The court's analysis applies to all of these documents despite the minimal variations in descriptions.

these documents are both deliberative, in that they reflect comments about the pros and cons of various promotion selections, and predecisional, in that they were made prior to any decision. State's statement that the document "may or may not reflect" a final decision raises the possibility that State did not properly segregate the exempt material from the non-exempt material, a possibility discussed in the section below. *See, e.g.*, *Elkem Metals Co. v. United States*, 24 C.I.T. 1395, 1403 (C.I.T. 2000) (holding commissioners' predecisional comments could be redacted from questionnaire but final vote was properly disclosed). However, the documents contain material clearly protected by the deliberative process privilege.

Similarly, questionnaires[7] sent by OIG "to board members as part of the OIG's investigation into Ms. Wadelton's grievances, including the board members' responses to the questions" appear to be predecisional and deliberative. (*Vaughn* index at 14-15).[8] The board members' answers describing the procedures and decisions made with respect to Wadelton are privileged to the "extent they recount or reflect predecisional deliberations." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 800 F. Supp. 2d 202, 218 (D.C. Cir. 2011) (citations omitted) (internal quotation marks omitted). The questions posed are themselves predecisional and deliberative, as they shed light on which facts OIG felt required development and the manner in

---

[7] C05465904, C05465909, C05465911, C05465913, C05465915, C05465917, C05465919, C05465921, C05465924, C05465926, C05465928, C05465931, C05465934, C05465939. State has asserted work product protection over these documents, so to the extent any material would be deemed to fall outside the scope of the deliberative process privilege, it would remain shielded from disclosure as attorney work product, for the reasons discussed above.

[8] Plaintiffs challenge the assertion of the deliberative process privilege over two other documents related to the OIG investigation. C05465937 is a fax cover sheet from an OIG "agent and board member" pertaining to "OIG's investigation into Ms. Wadelton's grievances. The information in this document contains details of decisions being made about how to respond to the allegations made by Ms. Wadelton." (*Vaughn* index at 15). C05465947 is a "record of conversation between an OIG agent and a board member relating to OIG's investigation into Ms. Wadelton's grievances. The information in this document contains details of an interview with a board member about his role on one of Ms. Wadelton's promotion boards." (*Vaughn* index at 16). State also asserted work-product protection over C05465947. (*Id.*). The Court's determination that OIG's fact-gathering is protected by the deliberative process privilege applies equally to these documents.

which OIG went about developing those facts. *See E.E.O.C. v. Swissport Fueling, Inc.*, No. 10-cv-2101, 2012 WL 1648416, at *16 (D. Ariz. 2012) ( "[w]here either the disclosure of the manner of selecting or presenting facts would expose the deliberative process, or where facts are 'inextricably intertwined' with 'policy making processes,' the material is [subject to the privilege]") (alterations in original) (citing *Playboy Enters., Inc. v. U.S. Dep't of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982)).

### iii.  Segregability

Finally, Plaintiffs (once again without citation to any legal authority) suggest the court must *sua sponte* consider whether the agency properly determined which records to withhold in full and which to redact.  (Pls. Opp'n at 13).  Defendant does not address this challenge, though asserts generally that it complied with its obligation to ensure that it withheld, where possible, only portions of documents that are exempt from production under FOIA.  (Def. Mot. at 19).  As an initial matter, segregation analysis is not required when a document is protected as work-product. *Shapiro*, 969 F. Supp. 2d at 31.  Thus, Plaintiff's challenge can only apply to documents withheld for the deliberative process privilege (or other unchallenged privileges).

The Government bears the burden of demonstrating that "no reasonably segregable information exists" in a document withheld in full.  *Elec. Privacy Info. Cntr. v. U.S. Dep't of Homeland Sec.*, 892 F. Supp. 2d 28, 43 (D.D.C. 2012) (quoting *Loving v. Dep't of Def.*, 550 F.2d 32, 41 (D.C. Cir. 2008)).  FOIA requires only separation of what is "reasonably segregable," permitting the agency to avoid committing significant time and resources "to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Id.* (citation omitted). To meet its burden, the government must provide a "relatively detailed justification," showing, "with reasonable specificity," why a document cannot be redacted in part instead of withheld in full.  *Id.* (citations omitted).  Information which

assists the court in determining whether the agency properly determined redaction was

unreasonable includes "what proportion of the information in a document is non-exempt and

how that material is dispersed through the document."  *Mead Data Cent., Inc. v. U.S. Dep't of*

*Air Force*, 588 F.2d 242, 261 (D.C. Cir. 1977).

    In this case, the Government's conclusory assertion that it satisfied its segregation

mandate is particularly troubling in the context of the handwritten notes which "may or may not

reflect" raters' final decisions on promotion.  (*Vaughn* index at 6-7, 11, 48).  If the final decision

is reflected somewhere in those notes, that decision is likely not shielded from disclosure and, to

the extent reasonable and practicable, should have been produced with redactions over the

legitimately privileged material.  Either the final decision is not reflected in the documents, in

which case full withholding is appropriate, or the final decision is reflected in the documents, in

which case State must provide additional information justifying the decision not to redact the

predecisional material and produce the final decision.  Absent that showing, summary judgment

on the issue of segregability is improper at this time.

## IV.    CONCLUSION

    As set forth above, Defendant has failed to demonstrate that it conducted an adequate

search of either HR or Management.  In addition, although its assertions of privilege are proper

(save for possibly one challenged document), the Government failed to meet its burden of

establishing it produced, via redaction, all reasonably segregable material.  Summary judgment

must therefore be denied at this time.

    A corresponding order will issue separately.

Dated: May 26, 2015