UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOAN WADELTON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 13-cv-412 (TSC) |
| ) | |
| DEPARTMENT OF STATE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Joan Wadelton is a retired Foreign Service Officer involved in litigation against the Department of State ("State") concerning her non-promotion. In this Freedom of Information Act ("FOIA") action, joined by the progressive blog Truthout, she seeks documents about her that were maintained in various State Department offices, including the Bureau of Human Resources ("HR"), the Office of the Under Secretary for Management ("Management"), and the Office of the Legal Advisor ("Legal"). Defendant filed a motion for partial summary judgment on January 5, 2015, as to records maintained by HR and Management. (Def. Mot. Partial Summ. J., ECF No. 44). This court denied the motion, finding some of the Defendant's explanations of their searches inadequate: their justifications for having only searched the emails and files of one employee in the Grievance division of HR, and only two unnamed employees in HR's Performance Evaluation division; their explanation of the decision to search only Under Secretary Patrick Kennedy's unclassified emails, and no other records of his; their description of one document withheld as work product; and their segregability analysis. *Wadelton v. Department of State*, 106 F. Supp. 3d 139 (D.D.C. 2015).

Defendant renewed its summary judgment motion on August 31, 2015, as to HR and Management, and also moved for summary judgment as to Legal. Because the Defendant has satisfied the court with additional details regarding the issues for which summary judgment was previously denied as to HR and Management, and because the court finds the Defendant has adequately resolved Plaintiffs' objections to withholding of seven Legal documents in full, summary judgment for the Defendant will be GRANTED.

## I.     BACKGROUND

On October 1, 2012, Wadelton submitted a FOIA request for "copies of all [State Department] emails or other documents pertaining to [Wadelton] from 2000-present maintained or created by the Bureau of Human Resources or, in the case of emails, in which a Bureau of Human Resources employee or contractor was a sender or recipient." (Def. First Statement of Material Facts ¶ 1, ECF No. 44).[1] She also requested copies of all "emails or other documents pertaining to [her] from 2004-present maintained or created by the Office of the Under Secretary for Management or, in the case of emails, in which an Office of the Under Secretary for Management employee or contractor was a sender or recipient." (*Id.* ¶ 2).

State conducted a number of searches: Melinda Chandler, Director of the Grievance Staff of the HR department, searched the Grievance office shared drive and her own files and emails, as well as a file drawer containing paper records pertaining to Wadelton; two Performance Evaluation staff searched the Performance Evaluation shared drive and their own files and emails; the Chief Policy Advisor of Retirement searched the Retirement shared drive and their own files; and the Under Secretary for Management, Patrick Kennedy, searched his State Department emails. In addition, Management searched the Retired Records Inventory

---

[1] Plaintiffs do not dispute any of the material facts stated by Defendant in the first summary judgment motion. (Pls. First Opp'n at 1, ECF No. 49).

Management System.  State also conducted searches within Legal, specifically the Office of Employment Law—a paralegal searched paper and electronic files for Wadelton's name, and staff member files of those who worked on Wadelton's case were also searched—and withheld various documents pursuant to FOIA exemptions (b)(5) and (b)(6) and the Privacy Act.

State originally withheld documents pursuant to six exemptions and provided a *Vaughn* index identifying the documents withheld and the reason.  It filed for summary judgment as to the HR and Management documents.  The court denied summary judgment, and State now responds to the court's concerns about its HR and Management records and also moves for summary judgment as to its Office of Employment Law disclosures.

## II.     LEGAL STANDARD

Summary judgment is appropriate where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id.* (quoting *Anderson* 477 U.S. at 248).  The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that

expedited action is justified." *Taxpayers Watchdog, Inc., v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987).

FOIA cases are "typically and appropriately" decided on motions for summary judgment. *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (citation omitted).  Upon an agency's request for summary judgment in its favor on the grounds that it has fully discharged its FOIA obligations, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester; only after an agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate. *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).

In cases concerning the applicability of exemptions and the adequacy of an agency's search efforts, summary judgment may be based solely on information provided in the agency's supporting declarations. *See, e.g.*, *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 838 (D.C. Cir. 2001). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU*, 628 F.3d at 619. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* (internal quotation marks omitted) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).  However, a motion for summary judgment should be granted in favor of the FOIA requester where "an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *Coldiron v.*

*U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (internal quotation marks omitted) (quoting *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992)).

In considering the adequacy of an agency's search in response to a FOIA request,

> [t]he question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*. The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith."

*Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citation omitted). An agency may prove the reasonableness of its search through a declaration of a responsible agency official, so long as the declaration reasonably details the documents and justifications for nondisclosure and is not controverted by contrary evidence or evidence of bad faith. *Sanders v. Obama*, 729 F. Supp. 2d 148, 155 (D.D.C. 2010), *aff'd sub nom. Sanders v. U.S. Dep't of Justice*, 10-5273, 2011 WL 1769099 (D.C. Cir. Apr. 21, 2011) (citing *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). Although the agency is not required to search every record system, it must make a good faith effort to reasonably search systems that are likely to contain the requested information. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency declaration can demonstrate reasonableness by "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Sanders*, 729 F. Supp. 2d at 155 (citation omitted) (internal quotation marks omitted). Once an agency has provided adequate affidavits, the burden shifts to the plaintiff to demonstrate that the agency did not make good faith search. *Id.* The presumption of good faith "cannot be rebutted by 'purely speculative claims about the existence and

discoverability of other documents.'" *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).

### III. ANALYSIS

#### A. Adequacy of State's search

##### i. Search of HR

In its 2015 denial of summary judgment, the court found the Defendant's explanation of its decision to search only the emails and files of the Grievance division's Director, and only the emails and files of two Performance Evaluation division employees, "raise[d] more questions than it answer[ed]." *Wadelton*, 106 F. Supp. 3d at 146. Given the existence of an entire filing cabinet drawer labeled "Wadelton," and the Plaintiffs' allegations that several other specific Grievance division employees were involved in Wadelton's grievances, the court believed State had not properly justified limiting its search to the Director's files by explaining that the Director supervised the whole office. The fact of the Director's supervisory role, the court explained, did not inform the court whether there were other search locations likely to contain the emails pertaining to Wadelton that Plaintiffs requested, such as the emails and files of other Grievance division employees. The court also found State's explanation that the Director was, at the time of the search, the only Grievance employee involved in Wadelton's case unconvincing, because FOIA obligations do not end as to a particular employee when that person leaves their position.

State now responds that electronic records in the Grievance division relating to a grievant are all printed and subsequently "filed centrally in paper format." (Def. Second Mem. P. & A. at 14, ECF No. 58 (citing Third Hackett Decl. ¶ 24)). These paper files include printed copies of any "record emails" pertaining to Wadelton, defined by State policy according to the Federal Records Act definition. 44 U.S.C. § 3301 (2012); 5 *Foreign Affairs Manual* (FAM) 443.2. State explains that its policy is not to preserve "every email message," but only those which contain

"evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government, or because of the information value of the data in them." (Third Hackett Decl. ¶ 24 n.6 (quoting 44 U.S.C. § 3301)). After 180 days, the electronic versions of these emails are deleted. (*Id.* ¶ 26). All emails that would be responsive records to Plaintiffs' request, therefore, would no longer be stored in electronic format—because all other employees who worked on Wadelton's case had retired or left Grievance more than one year before receipt of the request. (*Id.*) Thus, State argues, it would have been futile to search the electronic records of any other Grievance division employees. Because the Director searched the paper case file, then, any "record emails" would have been contained in that file, and the search was therefore reasonable. While the court previously found State's argument—that extensive electronic searches were unnecessary because there were paper copies of "record emails"—inadequate, because State had not defined "record email," the court now finds the proffered definition allows it to conclude that the searches were adequate.

Plaintiffs respond that State was under an obligation to preserve every email, rather than only "record emails" within the meaning of the Federal Records Act in accordance with State's usual document retention policy, because Wadelton's "longstanding administrative complaints," which preceded the actual FOIA request, put State on notice of pending, imminent, or reasonably foreseeable litigation. (Pls. Second Opp'n at 5–6); *see* Fed. R. Civ. P. 37(e) advisory committee's notes to 2015 amendment ("Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable. Rule 37(e) is based on this common-law duty . . . .").

Plaintiffs attempt to turn civil discovery rules into FOIA obligations. While an agency violates its FOIA obligations by destroying records once a FOIA request has been received, any

7

previous failure to preserve records related to pending or imminent litigation is not a FOIA violation.  *See Landmark Legal Found. v. E.P.A.,* 272 F. Supp. 2d 59, 66 (D.D.C. 2003) ("It is well settled that a FOIA request pertains only to documents in the possession of the agency at the time of the FOIA request. That an agency once possessed responsive documents but does not at the time of the FOIA request does not preclude summary judgment in the agency's favor. FOIA does not impose a document retention requirement on agencies.") (citations omitted).  State has demonstrated that under its regular email retention policy, the electronic versions of "record emails" and all versions of non-record emails by former HR staff were already destroyed prior to receiving the FOIA request.  To the extent Plaintiffs' argument is that the civil discovery rules mean that State must be in possession of more responsive records than it released, they must challenge the adequacy of the search rather than the adequacy of the results.  They claim that Wadelton's ongoing administrative process gives rise to an inference that record emails would exist going back many years, and they complain that State failed to turn over any emails more than a few years old.  But State replies "there were scores and scores of email messages released, many of which dated back to the 2002 and 2003 time period."  (Def. Second Reply at 3).  Plaintiffs' speculation as to the existence of other records does not warrant the denial of summary judgment.

Plaintiffs note that Defendant referred to a "set of back-up digital versatile disks ('DVD') containing the electronic records of certain individuals who worked in HR in connection with Ms. Wadelton's separate litigation against the Department" that "were in the possession of a former Legal employee" and were then misplaced.  (Third Hackett Decl. ¶ 10 n.4).  Plaintiffs suggest that these DVDs may have contained the only copies of many of the responsive records they seek, and that Defendant has not adequately searched for the disks.  But the Hackett

Declaration also indicates that Defendant conducted an "extensive search" for the disks and could not locate them, nor could it determine whether the disks contain responsive material not already produced. (*Id.*). The court cannot find that State has failed its FOIA obligations by being unable to locate the disks, because State's only obligation is to conduct a reasonable search, and the court has no reason not to credit Hackett's assertion that the search for the DVDs was "extensive." Furthermore, according to State's described policy, it appears likely that the emails contained on the DVDs would be copies of the same "record" emails saved in Wadelton's paper file. Plaintiffs have given the court no reason to believe that HR staff would have applied a different definition of "record" in determining what to save on the disks than in determining what to print and put in the paper file.

While the court is somewhat troubled by these missing DVDs, Plaintiffs have not shown how State's described search for the DVDs was inadequate, nor have they pointed to any evidence indicating that there are unique files on the DVDs that would not be duplicated in State's other files. The DVDs therefore do not warrant the court's denial of summary judgment.

In its 2015 opinion, this court also found that State did not provide enough information about its search of two Performance Evaluation division staff members' emails and files for the court to determine whether the search was adequate. State now explains that "[u]pon further review . . . it was determined that actually four employees had searched their records." (Def. Second Mem. P. & A. at 16 (citing Third Hackett Decl. ¶ 27)). State declares that the four employees whose records were in fact searched were the only employees in the Performance Evaluation division "that were involved in the promotion reconsideration boards for Wadelton." (*Id.*) Based on this additional information, the court concludes that State conducted an adequate search of both the Grievance and Performance Evaluation Human Resources staff records.

Since the court's first denial of summary judgment, the Defendant conducted additional searches in the files of a number of other HR employees: Director General of Human Resources Arnold Chacon; Deputy Assistant Secretary for Human Resources Linda Taglialatela; Diplomat-in-Residence at Arizona State University Harry Thomas; Hans Klemm, formerly of the Career Development Assignments division of HR; and former employees Susan Alexander, Steve Browning, Nancy Powell, and George Staples.[2]  Plaintiffs argue that Defendant should have searched the files of all employees (including a number of specifically named employees) who received legal advice from Legal attorneys regarding records preservation, (*see* Pls. Second Opp'n at 6 n.4), but do not suggest that the Defendant conducted a search of an inadequate number or an improper selection of HR employees.

Plaintiffs argue that the scope of the searches of Taglialatela, Thomas, and Under Secretary Patrick Kennedy's records was insufficient. Plaintiffs argue that Taglialatela's and Thomas's search of their records using Wadelton's full name—as opposed to just her last name—improperly narrowed the potential results.  (The court will address Plaintiffs' objections regarding Kennedy below.)  Defendant explains that the Taglialatela and Thomas searches did, in fact, use Wadelton's last name in isolation, and Defendant's analysts conducted new searches at the time of briefing "out of an abundance of caution" to confirm the results.  (Fourth Hackett Decl. ¶ 5–6 (noting that Taglialatela's original search of her own files used "Wadelton," not "Joan Wadelton," and Defendant's analyst conducted a new search of Taglialatela's files on

---

[2] State also asked Chacon, Taglialatela, Thomas, Klemm, and Teddy Taylor, Consul General in Cape Town, South Africa, to search the files in their possession for responsive records.  While Chacon, Taglialatela, Klemm, and Taylor are perhaps obvious choices for searches (the former three are or were directly involved in HR decisions; and the latter was Consul General in South Africa, while Wadelton was the Senior Advisor for Africa with the Bureau of Economic, Energy, and Business Affairs from 2007 until 2011), the remaining employees—Thomas, Alexander, Browning, Powell, and Staples—are not.  State does not describe anything about the positions of those five employees that suggests they would likely have responsive records related to Wadelton, but Plaintiffs have not objected to the selection of these named individuals.

October 8, 2015, using "Wadelton," to confirm Taglialatela's results; the analyst conducted a new search of Thomas's records on the same date for "Wadelton" as well.)).

The court is satisfied that Defendant has met its burden of showing that it conducted an adequate search of HR files.

### ii. Search of Management

The court previously denied summary judgment as to Defendant's search of Management records because Defendant did not adequately explain why it only searched Secretary Kennedy's unclassified emails, and not any other type of record. The court also required information about whether Kennedy maintains paper records outside his office, whether Management maintains paper records outside its office, and whether anyone in Management ever prints and preserves any documents. State now explains that Management scans all paper documents into a database called Everest, and then retires the paper files after one year. Any records that Management possesses, then, would be in Everest. A search of Everest with no date parameters located no records.

Plaintiffs' only remaining objections to the Management search relate to the time frame: that the search of Kennedy's emails was cut off on April 30, 2013 (almost a year after Plaintiffs' original request), and that Kennedy may have used private email to send or receive record emails, and the Defendant should have taken measures to find out whether he did so and to recover any external records he created.[3] The court finds that Defendant's use of an April 2013

---

[3] There is some D.C. Circuit precedent, although not cited in either party's briefings, suggesting that date-of-search cut-off dates are preferable to other cut-off dates. *See, e.g.*, *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 643–44 (D.C. Cir. 2002) (noting that the State Department's "reflexive application" of the date of request as a cut-off date was not reasonable); *McGehee v. C.I.A.*, 697 F.2d 1095, 1101–03 (D.C. Cir. 1983) (finding that a date of search cut-off date is not always appropriate, rather, the defendant must demonstrate that the cut-off date chosen was reasonably calculated to return the information requested), *vacated in part on other grounds on reh'g sub nom. McGehee v. Cent. Intelligence Agency*, 711 F.2d 1076 (D.C. Cir. 1983). Perhaps Plaintiffs mean to argue that, accordingly, the Defendant should have searched Kennedy's email records dating through October 2015. But the date described in *Public Citizen* and *McGehee* was "when an agency *first* releases documents," *Public Citizen*, 276

cut-off date was reasonable. Plaintiffs have not pointed to any responsive records they believe would likely have been created between April 2013—the date used (see Third Hackett Decl. ¶ 31)—and the date of the second search in October 2015. The Defendant carries the burden of demonstrating that the temporal scope it used was reasonable. *See McGehee v. C.I.A.,* 697 F.2d 1095, 1101 (D.C. Cir. 1983). And while the Defendant's explanations for its temporal limitations could be clearer, it has met its burden by pointing out that the April 2013 cutoff is "well after the date of State's receipt of the FOIA requests." (Def. Second Reply at 5). The reasonableness of the temporal limitation is a case-by-case inquiry, and the court finds that given the Defendant's second search using a later date than it had used previously, as well as the lack of any information that could give rise to an inference that the scope of the search was inadequate, the search was reasonable.

Plaintiffs argue that summary judgment is also inappropriate as to the Management files because Kennedy may have used his private email accounts to create agency records. Their argument is based on a July 2015 hearing in an unrelated case against the Defendant, in which John Hackett indicated that "As far as [the State Department] know[s]," Kennedy did not use private email to conduct government business. (Pls. Second Opp'n at 7–8) (citing *Associated Press v. Dep't of State*, No. 15-cv-345, minute entry July 29, 2015). The court need not reach the question of whether and how an agency must locate agency records stored on private email servers, because the Plaintiffs' argument is highly speculative. Not only is the hearing referenced not part of the record for this case (and the Plaintiffs have not attached any transcript), even if it were, Hackett's declaration would suffice to demonstrate that the agency fulfilled its

---

F.3d at 642 (citing *McGehee*, 697 F.2d at 1103), rather than the date used for subsequent searches pertaining to the same FOIA litigation, such as was the case here.

FOIA obligations. The Defendant is not required to express absolute certainty regarding the location of its records; it is required to conduct a reasonable search.

### iii. Search of the Office of the Legal Advisor

State now requests summary judgment as to the Legal records as well. It determined that the Office of Employment Law division —which provides legal advice to the Director General of the Foreign Service and the Director of Human Resources and defends State in front of the Equal Employment Opportunity Commission and the Merit System Protection Board and in federal court—was likely to have responsive records to Plaintiffs' request. (Def. Second Statement of Material Facts at 2). A paralegal for the Employment Law division searched the office's electronic and paper files, as well as email records of division staff who worked on Wadelton's case, using the time frame January 1, 2002 to May 23, 2013. (*Id.* at 3–4). The searches resulted in "14,300–16,300 pages of potentially responsive material," which State determined in large part were not relevant to Plaintiffs' request or were duplicated elsewhere in the responsive records released from other searches. (*Id.* at 4). As to the remainder, State released some in part or in full and withheld some in full, and it supplied the Plaintiffs with a *Vaughn* index documenting the reasons for withholding. (*Id.*)

Plaintiff has made no objections to the adequacy of the Defendant's search for responsive records from Legal, objecting only to the withholding of seven documents in full.

### B. Defendant's Withholdings under FOIA Exemptions

### i. Attorney Work Product

Documents "prepared in anticipation of litigation" are typically not discoverable in civil litigation and are therefore exempt from production pursuant to FOIA exemption (b)(5). *Shapiro v. U.S. Dep't of Justice*, 969 F. Supp. 2d 18, 27 (D.D.C. 2013) (quoting Fed. R. Civ. P. 26(b)(3)(A) (2012)). The doctrine protects "the mental impressions, conclusions, opinions, or

13

legal theories of an attorney," and "factual materials prepared in anticipation of litigation." *Tax Analysts v. I.R.S.*, 117 F.3d 607, 620 (D.C. Cir. 1997) (internal quotation marks omitted); *see also F.T.C. v. Grolier, Inc.*, 462 U.S. 19, 28 (1983); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 432 F.3d 366, 371–72 (D.C. Cir. 2005); *Toensing v. U.S. Dep't of Justice*, 999 F. Supp. 2d 50, 58–59 (D.D.C. 2013).

The court previously denied summary judgment as to the Defendant's assertion of work-product protection over document C05421835, which State described as a "memorandum listing the requirements for reconstituted board service and describing the procedures to be followed by the Wadelton reconstituted boards. It was prepared at the direction of a Department of State ("DOS") attorney in anticipation of the Wadelton litigation, designated to be used exclusively in the Wadelton case." (First *Vaughn* index at 1, ECF No. 44 #2). The court noted that the *Vaughn* index did not make clear whether C05421835 was a document for internal use only by State's attorneys in connection with Wadelton's litigation against State, or a final draft of a document that was created to be or actually was presented to the court in that litigation. State now explains that the heading on document C05421835 states that it is for internal use only and that it is privileged attorney work product. In light of this additional information, the court will grant summary judgment as to the withholding of document C05421835.

Plaintiffs now object to seven documents withheld by State from the Legal search pursuant to the attorney work-product exemption. The first two documents—C05382149 and C05382152—are "a series of queries from the Department's Human Resources staff to members of the Reconstituted Board in Ms. Wadelton's case regarding certain board procedures, including their responses." (Second *Vaughn* index at 17, ECF No. 58 #2). Plaintiffs argue that because the *Vaughn* index notes that the emails are between "HR/PE" and reconstituted board member(s),

14

they were not created by an attorney and do not meet the threshold requirement for attorney work-product exemption. (Pls. Second Opp'n at 8). State responds that the emails were "sent at the request of the Office of Legal Advisor," and therefore do qualify. (Def. Second Reply at 6 (citing Fourth Hackett Decl. ¶ 7)).

Documents prepared in anticipation of litigation by non-attorneys, that meet the remaining criteria for the work-product exemption, have been found to be privileged if created at the direction of attorneys, by agents of attorneys, or under the supervision of attorneys. *See United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (finding, in the criminal context, that work-product privilege protects material prepared by an attorney's agents); Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."). The D.C. Circuit has upheld the work-product protection of material created by a non-attorney at the direction of an attorney. *See Martin v. Dep't of Justice*, 488 F.3d 446, 455 (D.C. Cir. 2007) (Finding a memo "prepared by an FDIC investigator at the direction of an FDIC attorney" to be attorney work product). Because the two email exchanges at issue here involved requests for information regarding the reconstituted boards, made at the direction of attorneys, the court finds that they were properly withheld pursuant to Exemption 5.

The third document, C05384738, is described in the *Vaughn* index as an "internal note relat[ing] to an OSC 'timeline' and the need to notify a member of Management in that regard." (Second *Vaughn* index at 19). The index noted that it was hand-written and "neither addressed nor signed." (*Id.*) Plaintiffs argue that the document cannot be exempt work product if neither the recipient nor author are known, because it is unclear whether the document was created by an

attorney or at the direction of an attorney.  Defendant clarifies that the note described a timeline

created by the Office of Special Counsel, and that communications between State and the Office

of Special Counsel are handled by a Legal attorney who acts as the liaison, meaning that the note

was likely created by that attorney. (Fourth Hackett Decl. ¶ 8). The court finds State's

withholding was proper given that the document was, to the best of State's knowledge, likely

created by a Legal attorney.  Defendant's procedure is that communications between the Office

of Special Counsel and other offices and divisions are handled by Legal attorneys, (*id*.), and the

document is a note describing such a communication.

Plaintiffs also object to the withholding as work product four emails—documents

C05602098, C05602099, C05602244, and C05602987[4]—between Legal attorneys and attorneys

working in State's Office of the Inspector General.  They argue the emails are "correspondence

between two different independent legal offices which do not share common legal interests" and

are not covered by any privilege.  (Pls. Second Opp'n at 9).  Plaintiffs elaborate that Legal

attorneys might counsel agency employees involved in an OIG investigation and that OIGs

possess statutorily mandated independence that requires separating their interests from the

interests of the agency, in this case State, itself.  (*Id*. at 9–10).  State responds that because

Wadelton originally named the Inspector General and one of his agents as individual defendants

in her separate litigation, Legal attorneys were representing the Office of the Inspector General

in that matter, and the Office was therefore a Legal client. (Decl. of Karen J. Ouzts ¶ 3).  The

court agrees, and finds that, since the Office of the Inspector General and Legal were in an

attorney-client relationship during 2011, at the time the emails were exchanged, the documents

were properly withheld as attorney work product.

---

[4] Second *Vaughn* index at 55, 58, 82.

### ii. Segregability

The court also previously denied summary judgment on the issue of segregability regarding the "handwritten notes and comments made by promotion panel members about candidates for promotion prior to a decision being made on selection" that State withheld under the deliberative process privilege. (First *Vaughn* index at 6–7).[5] The court rejected the Defendant's explanation that the notes "may or may not reflect [panel members'] final decisions on the individuals being considered," *id*. at 7, finding that State had not met its burden of demonstrating that the notes could not be redacted rather than withheld in full. Either the final decision was reflected in the notes, the court noted, and those notes and the final decision were not exempt under the deliberative process privilege; or the final decision was not reflected the notes, in which case withholding was appropriate.

Defendant now responds that the handwritten notes "are deliberative in nature" and any factual information in them is deliberative because the selection of specific facts of import reveals panel members' thought processes. (Def. Second Mem. P. & A. at 18; Third Hackett Decl. ¶ 36 (the notes contain "preliminary observations of the candidates . . . intended to serve as a memory aid in subsequent discussions when all panel members meet to reconcile differences of opinion about the candidates."))[6] State has explained that there is no non-exempt information

---

[5] The court's analysis covered the "handwritten notes" in documents C05464292, C05464311, C05464410, C05464419, C05464688, C05469074, C05469076, C05469080, C05469084, C05469091, C05469095, C05469101, C05469103, C05469133, and C05469181. First *Vaughn* index at 6–7, 11, 48.

[6] John Hackett's point that "[m]ost of these notes relate to third party employees who were being considered for promotion," (Third Decl. at ¶ 36 n.8), does not excuse State's failure to segregate exempt material from non-exempt material. If anything, it highlights the fact that State could have released to the Plaintiffs any notes regarding Wadelton's promotion and withheld, for privacy reasons pursuant to Exemption 6, the notes relating to third parties. Ultimately it is not material to the court's decision, which is based on the deliberative process privilege rather than privacy.

17

contained in the handwritten notes, and segregability analysis is therefore unnecessary. Plaintiffs do not object, and the court finds that summary judgment is proper as to the handwritten notes.

Plaintiffs argue that a segregability analysis is necessary for the seven challenged Legal documents withheld as attorney work product. (Pls. Second Opp'n at 10). But, as the court noted in its earlier opinion, segregability is not required for work product exempt material. *Shapiro*, 969 F. Supp. 2d at 31. Neither is the court persuaded by Plaintiffs' argument that segregation is required because State invoked both work-product protection and Privacy Act protection. Plaintiffs cite a Department of Justice publication that notes that "several courts have held that reasonable segregation is required under the Act whenever a subsection (k) exemption is invoked." U.S. Dep't of Justice, Office of Privacy & Civil Liberties, Overview of the Privacy Act of 1974 293 (2015). [7] The publication cites several cases, none of which address the Privacy Act's subsection (k)(2) exemptions, which parallel FOIA's work-product Exemption 5, 5 U.S.C. § 552(b)(5) (2012). *See May v. Dep't of Air Force*, 777 F.2d 1012, 1015 (5th Cir. 1985) (involving Privacy Act subsection (k)(7)); *Lorenz v. U.S. Nuclear Regulatory Comm'n*, 516 F. Supp. 1151, 1152 (D. Colo. 1981) (involving subsection (k)(5)); *Nemetz v. Dep't of Treasury*, 446 F. Supp. 102, 105 (N.D. Ill. 1978) (also involving subsection (k)(5)).

The Defendant's invocation of the Privacy Act as well as the work-product exemption does not make a segregability analysis necessary. Even if Plaintiffs were correct that Privacy Act exemption (k)(2) requires an agency to segregate non-exempt portions of a document from exempt portions, or explain why all parts are exempt, the four documents described here would nonetheless be fully protected by Exemption 5. Defendants are not required to demonstrate that the material was not segregable.

---

[7] Available at https://www.justice.gov/opcl/file/793026/download.

## IV. CONCLUSION

For the reasons stated above, summary judgment for the Defendant is granted.

A corresponding order will issue separately.

Dated: September 22, 2016